

**ORDERED in the Southern District of Florida on July 05, 2011.**

_____
**A. Jay Cristol, Judge
United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**
www.flsb.uscourts.gov

In re:                                                          Case No. 10-45979-BKC-AJC

ROBERT SARHAN,                                  Chapter 13

    Debtor.
_____/

**ORDER ON CAIN AND ABEL DISPUTE**

    THIS MATTER came before the Court for hearing on June 24, 2011 at 11:00 a.m. (the "Hearing"), upon the Debtor's "*Emergency Motion for Contempt of Court, Motion for Damages for Violation of the Automatic Stay, Motion for Sanctions and Motion for Award of Attorney Fees and Costs Against Anthony Sarhan*" (the "Motion") [ECF 103]. The Court, having reviewed the Motion [ECF 103], the Debtor's supplement thereto [ECF 106], Anthony Sarhan's response to the Motion [ECF 118], the Debtor's Opening Statement [ECF 124], and the Debtor's Post-Trial

1

Memorandum of Law [ECF 125], having heard the arguments of counsel, having reviewed the testimony and evidence presented, and having considered the record in this case, makes the following findings of fact and conclusions of law:

### Introduction

1. This matter was filed as a motion for contempt and for violation of the automatic stay, but movant was really interested in a dispute between Debtor Robert Sarhan and his brother, Anthony Sarhan, involving their deceased mother's homestead (the "Home").

2. This order emanates from the Debtor's misguided and improper attempt to hold his brother in contempt of court for an alleged violation of the automatic stay involving Anthony Sarhan's efforts to seek authorization from a probate court to sell the Home for the benefit of both Anthony Sarhan and the Debtor, and to protect the Home from a pending foreclosure action.

3. Based upon representations of the Debtor and his former counsel, all parties initially wanted the Home to be sold. Anthony Sarhan's probate counsel appeared in bankruptcy court on April 6, 2011 and informed all parties that a sale was pending. The Debtor did not object and indicated that he required the proceeds from the sale of the Home for his chapter 13 case. The Debtor's wishes have now changed and the Motion was filed.

4. After considering all of the filings in this matter and the argument, evidence, and testimony presented at the Hearing, the court denies the Motion, grants Anthony Sarhan relief from the automatic stay, and reserves ruling on potential sanctions against the Debtor and his counsel, for the reasons set forth below.

### Appointment of Anthony Sarhan as Personal Representative

5. The Debtor and Anthony Sarhan have been involved in an eight-year battle over the care of their elderly mother and later, the administration of her estate. Prior to their mother's

passing in 2010, a guardian was appointed by a state court to oversee her affairs. Consistent with this appointment and pursuant to a court order, the guardian obtained a single reverse mortgage on the Home. The proceeds of the reverse mortgage were used to pay the living and medical expenses of their mother during the remainder of her life. The reverse mortgage has a balance of approximately $300,000 as of March 2011.

### Preservation and Proposed Sale of the Home by Anthony Sarhan

6. After their mother passed away, Anthony Sarhan was appointed personal representative of her estate in accordance with their mother's will. The Home is the only significant asset. Anthony Sarhan expended personal money to pay for insurance, taxes and other necessary expenses on the Home since his mother's passing.

7. In 2010, a lawsuit was filed in state court to foreclose on the reverse mortgage. Neither Anthony Sarhan, nor the Debtor have the financial resources to satisfy the reverse mortgage on the Home.

8. To preserve as much equity as possible in the Home, Anthony Sarhan placed the Home for sale more than seven months before the Petition Date and more than fourteen months prior to the Hearing date.

9. Anthony Sarhan located a buyer for the Home for $750,000 [ECF 118, Exhibit "C"] in late March 2011 and filed a motion in the probate court to approve the sale.

10. Anthony Sarhan recently rented them Home to the potential buyer to offset the costs of the Home's expenses.

### The Bankruptcy Case

11. The Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code on November 23, 2010 (the "Petition Date"). Anthony Sarhan was not informed of the bankruptcy

petition until his probate counsel, Cheryl Silverman ("Silverman"), was contacted by one of the Debtor's creditors and asked to appear at a hearing on April 6, 2011 in bankruptcy court.

12. Silverman appeared telephonically at the April 6, 2011 hearing and informed all parties that she had not received notice of the bankruptcy case, that the Home was going to be sold, and that the Debtor would be inheriting money from the sale. The Debtor made representations at that hearing and in his pleadings that he would be using proceeds from the sale of the Home to fund his chapter 13 plan. Specifically, in the Debtor's "*Motion to Extend Stay*", the Debtor stated:

> Paragraph 11: The pending Estate Settlement of my mother, Yvonne Sarhan in which I will receive at least 200,000 to 350,000 dollars and will be able to pay the Creditor most of the mortgage if not in full.
>
> Paragraph 14: The pending estate of my mother, Yvonne Sarhan will give me between 200,000 and 300,000 dollars more than enough to pay the Creditor off or give him a large payment. Therefore, the plan is to start working and start paying the Creditor the monthly mortgage and when the estate of my mother is settled. I will try to pay off the Creditor or pay off at least half the mortgage.

[ECF 23]. In addition, at the April 6, 2011 hearing on H & H Investors, Inc.'s "*Motion for Relief from Stay*", the Debtor stated that the Home was scheduled for sale and the Debtor would be receiving money from the probate estate. [ECF at pp 6-7]

13. The Debtor did not object to the sale of the Home at the April 6, 2011 hearing or raise any concerns regarding the automatic stay.

14. Consistent with the Debtor's representations, Anthony Sarhan continued his efforts to sell the Home in probate court.

**The Motion**

15. The Debtor subsequently obtained new counsel to represent him in his chapter 13 case. It appears the Debtor has now had a change of heart with respect to the Home and does not wish to see it sold.

16. Inexplicably, despite the Debtor's prior support for the sale of the Home, the Debtor filed the Motion, seeking sanctions and damages against his brother for alleged violations of the automatic stay.

17. Upon receipt of the Debtor's Motion, Anthony Sarhan immediately stayed all efforts to sell the Home. The Home has not been sold.

18. On June 8, 2011, the Debtor filed his Motion.

**The Hearing**

*Testimony*

19. In support of his Motion, the Debtor presented the testimony of Anthony Sarhan and Robert Sarhan and introduced into evidence several exhibits. Robert Sarhan's testimony consisted solely of his stating he did not give his brother, Anthony, authority or permission to do several things. Not one scintilla of his testimony related to any stay violation.

20. The Court finds that the testimony of Anthony Sarhan at the Hearing was competent, credible and direct. The Court finds that the testimony of the Debtor was irrelevant to any of the issues presented in the Motion.

*Legal Arguments*

21. At the Hearing, the Debtor argued that the Home passed to him as of the date of his mother's death by operation of law because it was homestead property and as such, any

attempts by Anthony Sarhan to sell, take possession, or control the Home constituted a violation of the automatic stay.

22. The Court is not persuaded by the Debtor's arguments.

23. Anthony Sarhan argued, on the other hand, that Florida law provides a personal representative those very powers. For example, Section 733.608, Florida Statutes, empowers a personal representative to take possession of the homestead property for the purpose of preserving, insuring and protecting it for interested parties, which can include renting the homestead. Similarly, Section 733.613, Florida Statutes, generally provides a personal representative the power to sell property, which may include homestead property. *See, e.g., McKean v. Warburton*, 919 So.2d 341 (Fla. 2006) (where personal representative sold homestead property and dispute arose of whether the proceeds could be used to pay specific monetary devises or whether the proceeds are preserved for the direct beneficiaries of the homestead).

24. The evidence presented at the Hearing revealed that Anthony Sarhan, as personal representative, did exactly what he was empowered to do by Florida law. Specifically, he sought to protect the Home from foreclosure and preserve the remaining equity for the benefit of all beneficiaries by taking possession of it, maintaining it, insuring it, attempting to sell it to preserve its value and fend off a foreclosure, and rent it to offset the expenses associated with these efforts.

25. And Anthony Sarhan made no secret of his efforts. In August of 2010, over three months prior to the filing of this bankruptcy case, he filed a "*Notice Confirming Personal Representative Taking Possession of Protected Homestead*" in the probate case pursuant to Section 733.608, Florida Statutes. [ECF 103 page 18].

26. Anthony Sarhan further argued at the Hearing that the Home was not property of the bankruptcy estate as of the Petition Date and therefore any attempts to sell the Home did not constitute a violation of the automatic stay.

27. Whether the Home constituted property of the bankruptcy estate requires an analysis of state law property rights as they relate to homestead property devised pursuant to a will. Anthony Sarhan argued that the Debtor's characterization of Florida law is incorrect. Citing to Florida case law which holds that homestead property is part of the probate estate for purposes of administration, Anthony Sarhan argued that the only interest which passes to a beneficiary as of the date of the decedent's death is the exempt nature of the home with respect to creditors of the decedent. Anthony Sarhan argued that when a homestead passes through a devise in a will, the home remains property of the probate estate, and therefore not the bankruptcy estate, until some event occurs transferring title to the beneficiaries. *Monks v. Smith*, 609 So. 2d 740, 43 (Fla. 1st DCA 1993) (when a homestead passes by virtue of a devise it is considered an asset of the probate estate, subject to protection from the decedent's creditors where applicable).

28. While the Court has doubts that a violation of the automatic stay occurred in this case based upon the arguments and law presented, the Court does not believe it is necessary to reach the merits of the Homestead argument.

29. Even if this Court assumes the Home is property of the bankruptcy estate and subject to the automatic stay, any violation of the automatic stay by Anthony Sarhan was technical in nature and cuased no harm to any party and was of substantial benefit to the Debtor and Debtor's bankruptcy estate and, therefore, not subject to an award of damages. It also supports the old adage that no good deed goes unpunished. Section 362(k) of the Bankruptcy

Code provides that a Debtor may recover damages only if he is injured by a "willful" violation of a stay. Based upon the facts presented in this case, the Court finds that there was absolutely no willful, knowing violation of the automatic stay by Anthony Sarhan or his counsel, Cheryl Silverman.

30. In addition, this Court finds that the Debtor suffered no damages as a result of Anthony Sarhan's attempt to sell the Home in the probate proceedings. The Debtor initially represented to this Court that he wished to have the Home sold to fund his chapter 13 plan. [ECF 23]. Once Anthony Sarhan learned that the Debtor apparently changed his mind, he stayed all actions to sell the Home. The Debtor has suffered no loss as a result. Therefore, even if the Home was property of the bankruptcy estate and subject to the automatic stay, and even if there had been a willful, knowing violation by Anthony Sarhan, the Debtor would not be entitled to any damages, actual or punitive. Indeed, the Home has not been sold and remains property of the probate estate.

31. As stated above, Anthony Sarhan had no notice, actual or constructive, of the bankruptcy proceeding until his counsel was notified by a creditor of the Debtor in early April, four months after the Petition Date and after Anthony Sarhan had already accepted an offer on the Home.

32. A suggestion of bankruptcy was not filed in the probate matter until April 21, 2011 [ECF 103 page 17], when all parties were operating under representations made by the Debtor at the April 6, 2011 hearing and in documents filed with this Court that the Debtor needed and wanted the Home sold. The Debtor's own schedules failed to disclose any interest in the Home or in an inheritance from his mother's estate, and Anthony Sarhan was not listed as a creditor, interested party, or otherwise in any of the Debtor's filings.

33.     By contrast, the Debtor had actual knowledge that Anthony Sarhan had been attempting to sell the Home for over a year prior to the filing of the Motion.  The Debtor filed no objections to the sale of the Home at any time during the first six months of this bankruptcy case.  Instead, the Debtor made multiple representations to this Court, his creditors and Silverman that he intended to use the proceeds from the sale of the Home to fund his chapter 13 plan.

34.     The Debtor's behavior encouraged all parties to proceed with the sale of the Home.  The Debtor's attempt to now characterize Anthony Sarhan's actions as a willful violation of the automatic stay is nothing more than a bad faith attempt to once again interfere with the administration of his mother's estate.

35.     It would not be appropriate or consistent with the spirit or letter of the law to find Anthony Sarhan in violation of the automatic stay for doing precisely what the Debtor wanted Anthony Sarhan to do – sell the Home.

36.     Accordingly, the Court finds that the Debtor's actions, and perhaps those of his counsel, Mr. Bublick, were petty, mean spirited, lacking in equity and a gross waste of this Court's time.  The Court is considering entering sanctions against both the Debtor and his attorney, Mr. Bublick, for the bringing of the meritless Motion and reserves ruling in that regard at this time.

*Ruling on Motion and Anthony Sarhan's Ore Tenus Motion*

37.     At the conclusion of the Hearing, counsel for Anthony Sarhan made an *ore tenus* motion to permit Anthony Sarhan to continue with the sale of the Home.  The Court grants that motion and finds that the circumstances of this case warrant the granting of relief from the automatic stay retroactive to the Petition Date to permit Anthony Sarhan to proceed with the

probate case including the sale of the Home. The Court grants this relief in an abundance of caution without conceding that stay relief is even necessary under the circumstances of this case.

38. If the Debtor and Anthony Sarhan cannot agree to the sale of the Home within five days, then Anthony Sarhan will be granted further stay relief to bring any necessary action in state court, including the authority to file a partition action against the Debtor.

39. Finally, the Court enjoins the Debtor from communicating with, talking to, or getting nearer than 100 yards of his brother, Anthony Sarhan. All communications and dealings regarding the windup of this case and the probate case should be done through their respective attorneys, except that Robert Sarhan may attend any probate court hearings or bankruptcy court hearings where he will be less than 100 yards away from his brother, provided he is in the company of his attorney(s) and is unarmed.

Based on the foregoing findings of fact and conclusions of law, the Court finds cause to deny the Motion. Accordingly, it is

**ORDERED** as follows:

1. The Debtor's Motion is **DENIED**.

2. Anthony Sarhan is granted full and complete relief from the automatic stay, *nunc pro tunc* to the Petition Date, to administer his mother's probate estate, including but not limited to the sale of the Home.

3. The Debtor and Anthony Sarhan are directed to attempt to reach an agreement with respect to the sale of the Home. If an agreement cannot be reached within five days, Anthony Sarhan is granted full and complete relief from the automatic stay to bring any action in state court against the Debtor for partition or any other state court action deemed appropriate, or to proceed in state probate court if the probate judge approves of that procedure.

4. The relief granted above will take effect immediately and will not be subject to the stay imposed by Bankruptcy Rule 4001(a)(3).

5. The Debtor is enjoined from having any communications with, or getting nearer than 100 yards of his brother, Anthony Sarhan, except as provided in paragraph 39 above. All communications between the Debtor and Anthony Sarhan regarding the windup of this bankruptcy case and the probate proceeding must be conducted through their respective attorneys.

# # #

Copies furnished to:

Ross R. Hartog, Esq.
Jordan Bublick, Esq.
Debtor

*Attorney Hartog is directed to serve a copy of this Order upon all interested parties and to file a certificate of service.*